Thank you, Your Honor. Good morning. I am extremely pleased and honored to appear before this Court this morning. May it please the Court, my name is Theodore Chin. I am joined at the defense table by Co-Counsel Howard Chang. We represent defendant appellant Andy Yip in this case. Mr. Yip had entered plea of guilties to four counts of false reporting of income tax and went to trial in one count of conspiracy and three counts related to reporting requirements of foreign accounts. I want to address the issue that we raised concerning the conspiracy account first. And that involves the Grinwall case. The rules set forth in the issue that we have raised is whether or not Grinwall requires the conviction of a conspiracy account to be vacated or, in the alternative, the conspiracy account be sentenced under the pre-2001 Sentencing Guidelines. The rule in Grinwall, which is the trilogy of cases that began with Rule Witch, Ludwig, Ludwok, and ending in Grinwall, established a rule that acts of concealment which were made after the objectives of the conspiracy charge in indictment had failed. They cannot be regarded as being made in the furtherance of the conspiracy. So the question here is the nature of the conspiracy and the duration of this conspiracy. Well, the indictment is perhaps ambiguous in that regard, but it begins by listing a time period that includes this time period and includes the listing of acts that did not take place in the way that you're wanting to limit the time period. So if the indictment is susceptible to more than one interpretation, what do we do? Because certainly one reading of the indictment is very tabid, the way you would like it to be. But another reading of it is to say that this is a conspiracy to keep the government from getting paid what it's owed. And the purpose of it is not limited to just this one little piece of it. What are we supposed to do if there are two reasonable readings of the indictment? Your Honor, I believe that a reasonable reading of the indictment cannot extend the period of the conspiracy to include the two overt acts that are alleged in the indictment. Well, what is it about the indictment that would prevent it from being read that way? Because it begins by talking about from early 1998 and continuing until July 12, 2002, which would encompass those acts. Well, if you look at the actual language of the charge of the indictment, there are four elements. One is that Mr. Yip conspired to defraud the United States. This is the indictment itself where it begins on page four. Excuse me. Well, the part you want us to look at begins on page two. The time that I described begins on page one. I understand. On or about early 1998, continuing thereafter until 2002. But if you look at the language of the actual operative language of the elements of this particular conspiracy as charged, I understand your argument. Here's how I read this indictment. The taxes are those taxes that were identified during an audit of Yip's 1995 and 1996 federal returns. That's right. And so defined, the conspiracy is to prevent the United States from ascertaining, computing, and collecting those taxes. And so if you read it that way, it doesn't require the conspiracy is not limited to the audit. The conspiracy is keeping the government from getting the money that it's owed. And that description merely describes what taxes we're talking about, the ones identified in the audit. That's not the only way to read this indictment. But why isn't that a fair way to read this indictment? Well, it's not a fair way to read this indictment because, well, there are two reasons. One is what Grimwald says, which is that that's a concealment, which is the two. That begs the question. That tells me, that presumes the answer. I want to know why this indictment can't be read to charge a broader conspiracy than merely the time period of the indictment. If you read the entire paragraph as a whole, with its assertion of a time period, with its assertion of some acts, and with its broad description of the conspiracy. Well, first of all, the indictment should be strictly read. And if you look at just the operative language, if you exclude the time period that is continuing thereafter until July 12, 2002, if you exclude that particular phrase, then the operative language in this indictment, the elements that are charged in this indictment, only restrict the conspiracy to the period where, during the audit of the 1999, 1995, 1996 tax return. And where it's, and if you look at all the operative elements of this conspiracy, impeding, impairing, obstructing, and defeating the lawful function of the IRS, in this ascertainment, computation, and collection of federal income tax, those are a function that is performed by the internal revenue agent, not by a special agent, which is a criminal investigative branch of the IRS. Well, let me just clarify a bit, because Grunewald, which you reasonably cite, was concerned in that case about statute of limitations. Yes, Your Honor. And one could read Grunewald as saying, you can't let the government extend the statute of limitations by taking the conspiracy to commit the crime, and then later on, when they find that they're under investigation, then they, in effect, create a new conspiracy to conceal the crime, and thereby extend the conspiracy. Now, the indictment on its face, in the latter portions of 9 and 10, or 10 and 11, whichever, makes it clear that there is a long time gap, and that you can temporally break apart the two segments of the case. The audit portion that's referred to, actually, in the first part of the indictment, it says all of the things you mentioned during an audit of Yip's 1995-96 joint federal income tax, and that audit was conducted, as you say, by an IRS agent or agents, and that was what they were conspiring to do at the time. The government has specifically said, well, but it went all the way through. They were trying to defraud the government from start to finish, and it's only happenstance that the government didn't get on them until later, and they've come after them with a separate group of investigators. So are you reading Brunvalde saying it just blocks that kind of indictment, or it wasn't alleged with enough specificity to qualify? I believe that they have alleged, strictly construed in this indictment, they have restricted themselves to the audit that was performed in 1999, 1997-1999. The audit of 95 and 96 tax return. Now, what they want, and Brunvalde. And what restricts them, because they mentioned during the audit of 95-96? Yes. And that's it. Even though they go on to specify everything else. Right. In addition to that, Brunvalde says, if you have acts of concealment, that cannot extend the conspiracy itself, because once the conspiracy as charged here had ended, and I submit that the conspiracy as charged has ended when Revenue Agent LaBerge completed her examination in June of 1999. That particular conspiracy has ended. It failed. It totally failed, which is what Reuben says, that if the conspiracy failed, then all the acts here say that occur after the failure of that conspiracy or success of that conspiracy, cannot be used to support inference of the conspiracy. And that's what they have done here. They have used these two overt acts, 9 and 10, to say that this conspiracy extended from when it ended in 1999 to 2002. Counsel, I think you've given us a good picture of your argument on this point. You've raised many, many, many issues. Yes, Your Honor. Is there any other one issue that you would like to direct our attention to as being your strongest or most important? Well, yes. In addition to the Brunvalde issue, which we believe is a very strong issue, we have raised the issue of the tax loss, the calculation of tax loss. First of all, as far as the computation is concerned, we listed a whole list of reasons and calculations that were completely done wrong. The first one is in this calculation on this face that we have cited. What they have done is take a negative income tax calculation that they computed themselves. The actual return itself had zero for the reported taxable income. Instead, they converted that into a negative number and subtracted it from the additional income that they calculated. So they came up with really a nonsensical number. So that's number one. That's a miscalculation on this face. What's the net effect of that mistake? I'm sorry? In dollars. In dollars, it was an amount of 300. The taxable income that they calculated to have been due was $351,000. And the negative number was $150,000. They came up with $500,000 of additional income. So that's one. And then the second one, as far as computation of tax laws, is the state income tax. The application of state income tax and state excess tax added those amounts to the total amount of tax loss, which is used, of course, to calculate the offense level. We submit that the Ninth Circuit has not ruled on whether or not the guidelines intended the use of state tax and excise tax in the computation of tax laws. Tax laws is really a term bar. The principles in which the sentencing guidelines stand for is that if they want uniformity, they don't want disparity in sentencing similarly situated defendants. What we have here is a situation where defendants in Washington or Nevada, which do not have income tax, will be sentenced at a different base level or offense level. But there's less evasion by the Washington taxpayer of tax payments generally than there is in, say, California, that has a heavy tax. Yes, I understand that. But at the same time, the question is whether or not the guidelines themselves intended that these state taxes be included in the calculation of tax laws. Well, does it depend upon the jurisdiction in which the taxpayer resided and evaded not only federal tax but state tax, knowing full well that both taxing authorities coordinate their examinations? Well, Your Honor, it's not that it depends on where the person is situated. It's whether or not it depends on the tax laws computation itself that's incorporated in the guidelines whether they actually intended to include those state taxes. And your theory is that because some states don't have any income tax and some states do that there would be disparity? Yes, Your Honor. That's one. Well, I know. Even if you don't even have to go to zero, I mean, there's always going to be a disparity. So you're saying because different states have different tax rates from zero to confiscatory 11.5 percent or 12 percent or whatever. So what you're saying is that no matter what, the fact that there are variables amongst states, then that means the guidelines couldn't have intended to include states. Yes, Your Honor. That's one ground. Notwithstanding that the person committing the crime knows going in what the state tax rates are going to be and therefore can control his or her behavior. Control where he resides, Your Honor. Well, Justice Fischer, that is only one of the grounds that we're saying that the tax should not be applied. If you actually examine the guidelines themselves, Section 2T1.1, if you do a strict construction on those guidelines, first of all, it does not state that state or local taxes should be included. That's number one. It doesn't say that. And if it wanted to say it, actually there is a provision in there that says in the application notes of 2T1.1, in reference to a special situation where unreported income comes from illegal sources, it said clearly and unambiguously that the kind of criminal conduct is to be any criminal offense under federal, state, or local law. But that's only in that very special situation. In any other situation, it did not define or did not state that state tax are to be included in the calculations of tax laws. And also, if you apply the language of 2T1.1 to state taxes, it doesn't make sense. For example, there's a presumption in the application of the tax. Well, you can't apply that presumption to state taxes. And the entire language of 2T1.1, the tax laws provision, only makes sense if you apply it to federal taxes. It doesn't make any sense if you apply it to any other kind of taxes. So I think not only is there a disparity and the uniformity problem, there's also a problem in how when you interpret the actual language in 2T1.1. And it's going to make a difference whether you report it or not in the computation of the tax due to the United States. You can take a credit for Washington sales taxes if you want to put it on the return, and it would reduce your income tax liability. And that is our second argument as far as this is concerned. If you're going to apply this, then you should apply the deduction. They did a very, very – instead of doing a – I'm sorry, Your Honor? You're hitting it twice for the same conduct. Exactly. So they should – so – How much difference does that make in terms of tax liability? Have you computed that? Yes, I did. It's in one of the calculations I did in the supplemental spreadsheets. It's in the back of the seal, except for record. Can you tell me the dollar amount? Your Honor, I don't have it. I don't have your brief, Your Honor. Yeah, I can. Well, if we were to agree with your general argument, would we not simply remand to the district court to do the calculating? Yes, Your Honor. We asked – and that is another problem, the violation of Rule 32, or noncompliance with Rule 32. We presented this before the court. He didn't do the – he didn't make any finding as far as whether or not this should apply. Counsel, you have about a minute and a half left.  Yes, I do, Your Honor. Thank you. We'll hear from Mr. Osborne. Good morning, Your Honors. May it please the Court, Les Osborne, Assistant United States Attorney for the District of Hawaii. And I will limit my remarks to the two arguments that counsel opined upon. Are you going to waive all the rest? No, I'm not going to waive them, Your Honor, but I'm not going to belabor them. I think they've been briefed on both sides. The indictment, first, is the Griswold problem that the defense finds. Griswold is – I think you mean Grunwald. Grunwald. I'm sorry, Your Honor. The Grunwald problem did relate to a situation in which the statute of limitations was implicated because there had been a conspiracy to get a false tax ruling. They got that false tax ruling. And years went by before that conduct, that obstruction conduct, came forward, and a second indictment based on the obstruction was returned. This is an entirely different situation. This is a case in which the government alleged that beginning in early 1998 and continuing until July the 12th of 2002, a conspiracy was developed to obstruct the lawful processes of the IRS in computing a tax. The vehicles of the fraud were the fabrication of false notes and the submission – pardon me – and the attempts to secure false testimony to present those false notes, if necessary, at trial, was definitely to the grand jury. Now, in addition to the dates, the indictment says that the purpose was to cooperate with this false story before the grand jury. Obviously, before the grand jury on page two and the acts there, by its very nature, had to be after the revenue agent had completed her activities and forwarded it along the line to the criminal division of IRS. This was a continuing conspiracy. In fact, as pled, another note was generated upon the referral to the criminal division, Akiko Coleman. So this was a continuing conspiracy. The purpose of that conspiracy was to defraud the United States by defeating the IRS computation and collection of the tax. Now, that scheme was to deceive not only the revenue agent, but the special agent and any review that might subsequently be taken. The government, as we said in our brief, find no Grunewald problem here. As to the computation of the tax loss, the figures presented by the United States were supported by the evidence, reviewed by the district court, and accepted in a rather detailed analysis, which is set forth in large part in the brief, of the United States. Simply put, the analysis presented in the presentence report was found to be more reliable by the district court than the Van Gunter analysis presented by the defense. Are you saying the cost of goods sold was zero for some portion of the time? Your Honor, no. Is that the net effect of the computation made by the district court? No, Your Honor. The district court gave the figure that, a credence to the figure that I believe was provided by Mr. Yip himself. When Mr. Yip put his off-the-books business, presented it to his bookkeeper, and the approximately $2 million was included, his income, he said he had a 10% profit there. And that's what was included, was his declaration on those monies of a 10% profit. We also know from Mr. Yip's own testimony, that when he talked to the revenue agent, he did not claim any inventory at all. He said all he had to his name was $300. So there is no real inconsistency with the analysis done by pretrial and the district court. The $351,000 figure that counsel talked about, that Mr. Van Gunter arrived at, is also the same figure that was arrived at by pretrial and the IRS. There is no inconsistency. Now, as to the state court tax situation and what you do about that, I mean, in the Ninth Circuit, NUBRT, I think, makes it very clear that the state tax loss is included in arriving at the appropriate guideline. And the NUBRT case, we've referred to in other very similar cases in other circuits now, that all take that position. In addition, there's the 4% state excise tax. There's no evidence to show that any of this activity was wholesale. It appears to have all been retail. And so there was the 4% state tax due as well. And that would normally be a deductible? On the federal? On the federal, yes, Your Honor. It doesn't show there, right? In the computation? The only thing that's in the computation is what? But it's not a deduction, Your Honor, until it's paid. It was never paid. Wait a minute. We're trying to figure out what the net tax due the government is. The net tax due the government is the figure appearing in the pre-trial report, and that's to the government of the United States. I'm going to ask it a different way because I think this may be what Judge Beezer is getting at. When figuring out what should have been paid to the federal government, there seems to be a circuit split on whether or not in calculating that amount one deducts the amount of state tax that ought to have been paid. In other words, if everything had been done lawfully back in 1995, then the government would have gotten X dollars, and part of that calculation of X would have been to give credit for the dollars Y of state taxes that would have been paid. Some circuits have said, in fact, I guess the majority, tough luck. You didn't pay it. You can't prove it. You're getting the double whammy. At least one circuit has said, no, when we figure out how much the federal government is owed, we take that amount out. And then when you add in the state taxes that were unpaid as a bit of related conduct, then you've only dinged him once. That, I think, is the argument. And what would be wrong with adopting that view? Your Honor, it was never paid. I understand that, but it seems like he's being given two hits for that. You've been charging him twice with the same item. One coming in and one going out. He did not pay it, and so at the time of sentencing, the tax record stays as the tax was. You don't get a deduction. Now, I see the inconsistency that the court is alluding to. But for sentencing purposes, if the money wasn't paid. But doesn't it inflate the amount of tax loss by saying that we're going to pretend it was never paid? I mean, it was never paid. It was never paid. So if you add it in as related conduct, the amount not paid to the state is added in. But then when you add to that amount the amount that should have been paid to the federal government, you're in a sense bringing the state tax in again. It seems unfair. Well, Your Honor, let me try one more time. The federal government tax that was due and owing is $100,000. This is for illustration only. Is $100,000. Included in that $100,000 is the nonpayment of state taxes. That $100,000 was arrived at based on the federal income for federal purposes. That's right. Now, for sentencing purposes, there was a tax due and owing to the state of $25,000. It doesn't get deducted from the $100,000 because it was never paid at the time of sentencing. It's like a bank robbery. If you take $100,000 and you give it back a week later, you're still responsible for the $100,000 in this case. Well, let me use a different example and you can tell me how you would do this. The money owed to the government in my example is going to be never paid. So the government gets zero. But let's say you have somebody who's 70 years old and has a spouse who's 70 years old. Do you calculate the tax using the standard deductions that would apply or not? Do you see what I'm saying? In other words, how do we know how much should have been paid to the federal government? It's more than just income, isn't it? There are other things that are taken into account. Yes, Your Honor, there are. But deductions of any kind... Can't you deduct the cost of goods sold? Yes. Okay, that's a deduction. But I wasn't going to argue with deductions, Your Honor. I'm all in favor of deductions. What I was going to argue with is the taking of a deduction which was never paid. So you didn't get credit for doing something that he didn't do. You don't put him back in as good a position as he would have been if he had complied with the law. That's our argument, yes, Your Honor. Can I ask a question? It's too far away from April 15th to go into. So I'm going to move back to one that somewhat relates, I think, to your first argument or the first argument on Grunewald that's somewhat related but maybe not, and that's on the obstruction of justice enhancement. We have two cases, Rising Sun and George, which seem to suggest that you get the obstruction of justice enhancement only for acts taken to deal with the criminal investigation. Now, when we were talking about what the indictment covered, you said, well, the conspiracy covers the entirety of the behavior from start to finish. But the criminal investigation, which is what Rising Sun and George emphasize as part of the enhancement, is that the obstruction of justice aspect comes when they seek to conceal the underlying criminal act, and that's when it becomes a criminal investigation. So under your counts 9 and 10, it's clear that the obstruction of justice activity under those two cases would seem to have occurred only then, and therefore it would be inappropriate to say there was obstruction of justice on the entirety of the behavior. Well, the obstruction of justice in this case would go to the cash business finally being put on the books, which happened after the matter was referred to CI, the Akiko Coleman note, and the disguising of the foreign bank accounts, in which about a quarter of a million dollars, the proceeds of the cash sale, was deposited by Mr. Yip in 97 and 98. I might be off by a year there. But in a foreign bank account, which he never then listed. So the obstructionist conduct by Mr. Yip in regard to the original notes, which were never repudiated, which they attempted to get testimony to support, a plethora of other notes that were proven at trial, the Akiko Coleman note, which was revealed when the matter was referred to the department, and the tax returns, which said there was no foreign bank account over which the defendant had control, all, I think, meet the court's test for obstruction. Is there any other questions? I don't believe so. Thank you, counsel. Thank you very much. Mr. Ching, you have about a minute and a third. Thank you, Your Honor. Quickly on the obstruction of justice. Overt Act and 9 do not support obstruction. In the brief, I set forth all the reasons why the application of the obstruction enhancement should not be applied in this case. It just does not fit within those application notes that it's called for in the enhancement of obstruction of justice. As far as the continuing conspiracy is concerned, reading the indictment strictly, in a strict construction way, they did not state that the, they did not charge that the conspiracy was to obstruct the special agent. Only the revenue agent, and only during the, that is, during the audit of the 1995-96 return. And revenue agent LaBerge says her examination's over. She doesn't, she does not believe any of the loan documents that were provided, and so she would have assessed the tax. So in actuality, the conspiracy has failed at that point. The rest of it is really concealment. Overt Act 9 and 10 is made for purposes of concealment, if that was alleged. As far as... I'm sorry, why weren't those, if they're concealment, why aren't they then obstruction of justice? Because, because it does not fit within the, within the, the application notes for application of obstruction. Concealment isn't obstruction? Not in this context. I see, okay. And as far as the deposits that the defendant had, the state, I mean, the government elected to use the deposit method of proof. And using that method, you have to have the initial amount. And also, using that method, you can, what they have done is do double counting. Counsel, you've exceeded your time. I think we do understand your position. Thank you very much. We appreciate the arguments of both counsel. This case is submitted. And we will stand adjourned for this morning's session. All rise. Thank you.
judges: Beezer, Graber, Fisher